UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00497-RJC
(3:15-cr-00121-RJC-DSC-5)

| | |
|---|---|
| MILTON CHAVARRIA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

## I.  BACKGROUND

Beginning as early as 2010, Petitioner Milton Chavarria ("Petitioner") was a member of the violent street gang La Mara Salvatrucha or MS-13, operating in and around Charlotte, North Carolina. [CR Doc. 876 at ¶ 10: PSR]. Petitioner had a gang nickname, "Syko," and was a member of a smaller group or clique, known as Trece Locos Salvatrucha or TLS. [Id.]. Consistent with the rules and expectations of MS-13, Petitioner committed acts of violence to maintain membership and increase his position in the gang. [Id. at ¶ 6]. For instance, in October 2011, Petitioner and other MS-13 gang members covered their faces with blue and white bandanas, representing the colors of MS-13, and robbed a group of women at gunpoint. [Id. at ¶ 11].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:18-cv-00497-RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:15-cr-00121-RJC-DSC-5.

On October 16, 2013, Petitioner participated in a shooting as part of an MS-13 gang-initiation process. [Id.]. On the day of the shooting, Petitioner and another MS-13 gang member, Luis Funes-Rivera, a/k/a "Demonio," picked up Alexis Villalta-Morales, who wanted to gain initiation into MS-13, drove to a nearby apartment complex, and directed Villalta-Morales to shoot the first black man that walked by them. [Id. at ¶ 11(b)]. As directed, when a black male approached, Villalta-Morales pointed a gun provided by the gang members at him. Villalta-Morales shot the victim, fired two additional shots, and fled. During the shooting Petitioner and Funes-Rivera served as lookouts. Petitioner, Villalta-Morales, and Funes-Rivera fled the scene in Petitioner's car. [Id.].

On May 19, 2015, Petitioner, along with 36 codefendants, including Villalta-Morales and Funes-Rivera, was charged with participating in a racketeering conspiracy, in violation of 18 U.S.C. § 962(d). [CR Doc. 3: Indictment]. Petitioner pleaded guilty without a plea agreement. [See CR Doc. 670 at ¶ 25: Acceptance and Entry of Guilty Plea; CR Doc. 1094: Plea Tr.]. As part of his guilty plea, Petitioner agreed to a factual basis. [CR Doc. 670 at ¶¶ 26-27]. The factual basis provided that on October 16, 2013, Petitioner, Funes-Rivera, and Villalta-Morales aided and abetted by one another attempted to murder a man in Charlotte, North Carolina. [CR Doc. 661 at 4: Factual Basis]. Petitioner, however, reserved the right to challenge certain statements in the factual basis relating to whether he had aided and abetted others in this attempted murder. [Id. at 5 nn.1-5].

Before sentencing, a probation officer prepared a Presentence Investigation Report (PSR), recommending an advisory guidelines range of 151 to 188 months in prison, based on a total offense level of 32 and a Criminal History Category of III. [CR Doc. 876 at ¶¶ 37, 51, 84]. In calculating the base offense level, the probation officer concluded that Petitioner's underlying

racketeering activity included attempted first-degree murder and, therefore, applied U.S.S.G. § 2A2.1 (Assault with Intent to Commit Murder; Attempted Murder), which called for a base offense level of 33. [Id. at ¶ 24].

Petitioner objected to, among other things, the calculation of the base offense level. Petitioner argued that § 2A2.1(a)(2), which was for second-degree murder and called for a base offense level of 27, was the proper guideline cross-reference. [CR Doc. 864: Objections to PSR at ¶¶ 4-14; CR Doc. 876 at 23: PSR Addendum]. At the sentencing hearing, Petitioner argued for application of § 2A2.1(a)(2), contending that Villalta-Morales and Funes-Rivera had provided "inconsistent stories" about the shooting on October 16, 2013. [CR Doc. 1095 at 5-9: Sentencing Tr.]. The Court overruled this objection and found that Villalta-Morales had the "intent to kill" and that the shooting was "premediated." [Id. at 29]. In support of this finding, the Court referenced evidence that the shooting "was for the purpose of entering a gang," that there were a number of shots fired, and the shooting was "unprovoked." [Id.].

Before his sentencing, Petitioner, despite being represented by counsel, submitted two *pro se* handwritten documents to the Court, one titled "Affidavit of Facts" and the other a letter addressed to the undersigned. [CR Docs. 917, 927]. In these submissions, Petitioner denied several facts related to the offense and his relevant conduct. In pertinent part, Petitioner claimed that he was not a member of the MS-13 gang and that his "brief" association with MS-13 ended in 2011. [CR Doc. 917 at ¶¶ 27, 41; CR Doc. 927]. Petitioner denied that his gang name was ever "Syko." [CR Doc. 917 at ¶ 23]. Petitioner characterized MS-13 as an "oppressor" of him and his family. [CR Doc. 927 at 2; see CR Doc. 917 at ¶¶ 34-36]. Petitioner also claimed that he did not know and had never spoken to the shooter, Villalta-Morales, and did not know the other gang members involved. [CR Doc. 917 at ¶¶ 24, 32-33]. Petitioner stated that he was not at the scene

3

when the shooting occurred on October 16, 2013, [Id. at ¶ 22], but instead was at a job site in Charleston, South Carolina, with his girlfriend at the time of the shooting [Id. at ¶¶ 28-29]. As to the Affidavit, Petitioner offered "his oath and affirmation, in the presence of Almighty God, that all stated here in is the truth." [Id. at 5].

Before and during the sentencing hearing, Petitioner's attorney moved to withdraw the letter and "Affidavit of Facts," citing Local Rule of Criminal Procedure 47.1, which provides that the Court "will not ordinarily entertain a motion filed by a criminal defendant who is still represented by counsel." [CR Doc. 1019; CR Doc. 1095 at 30-31]. The Court found that, because these submissions were not motions, Local Rule 47.1 did not apply. [CR Doc. 1095 at 31]. The Court further found that Plaintiff's submissions were "extremely relevant" to the issue of acceptance of responsibility and possibly to other issues in the case." [Id. at 31-32].

After hearing from the Government on the impact of Plaintiff's submissions on sentencing, the Court asked counsel for Petitioner to respond to the issue of acceptance of responsibility as well as to whether Plaintiff's submissions were an obstruction of justice. [Id. at 42]. Counsel argued against a finding of obstruction and in favor of reduction for acceptance of responsibility. [Id. at 42-44, 46-47]. Counsel told the Court, "obviously we tell our clients not to engage in filing stuff with the Court. Unfortunately, as in this case, sometimes they don't listen." [Id. at 43].

The Court noted that, "[i]f I believed this affidavit it would have a huge impact on my approach to sentencing, whether someone participated in the senseless and heinous shooting of this innocent person or instead was with somebody else in Charleston, South Carolina, when it occurred. It would have a huge impact on my 3553(a) decision." [Id. at 43]. After hearing extensive arguments from counsel for both parties, the Court found and held as follows:

> I have to find, in order to grant an acceptance of responsibility reduction, that the defendant clearly demonstrates

4

acceptance of responsibility for his offense. And in App. Note 1A [of U.S.S.G. §3E1.1], the finding includes truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under 1B1.1. I can't find that in this case. I am persuaded that in filing document number 917, and document number 927, that [Petitioner] was intending to influence the Court in a way that is inconsistent with acceptance of responsibility.

I specifically find that paragraphs 22, 23, 28, 31, and 33 are false. They appear to be knowingly false, and they appear to be inconsistent with a clear demonstration of acceptance of responsibility.

…

I also believe that the letters provided to the Court in 917 and 927 constitute attempted obstruction of justice. I think they are materially false. If the Court were to believe the statements made by the [Petitioner] in this Affidavit of Facts, the Court would have a much different approach to the 3553(a) factors than it would have if it did not believe those statements.

In addition, those statements would tend to have an effect on the Court's determination of the offense level with respect to the shooting. The Court has found that the shooting constituted a premediated first[-]degree attempted murder that was part of the relevant conduct, and that the [Petitioner] – it was reasonably foreseeable to the [Petitioner].

If the Court were to believe the statements in the [Petitioner's] Affidavit of Facts, it would have found some other offense level appropriate to his plea of guilty. Perhaps an offense level of 25 for the robbery which is contained in Count One of the indictment, and not a 35 as a result of the [Petitioner's] participation in the attempted murder which occurred on October 16.

And so is was definitely a provision of materially false information to a judge, meeting the definition both of materiality and falsehood.

And therefore the Court will, in addition to denying 3E1.1 acceptance, the Court is also going to adjust the advisory Guidelines upward 2 levels for an attempted obstruction of justice.

5

[CR Doc. 1095 at 47-49]. These adjustments resulted in a TOL of 37. [Id. at 50]. With a Criminal History Category of III, the advisory guideline range was 262 to 327 months before any consideration of variance or departure. [Id.]. After hearing from various witnesses on Petitioner's behalf and from Petitioner himself [Id. at 52-57] and balancing the factors and sentencing objectives of Section 3553(a), the Court varied downward to a sentence of 228 months [Id. at 60-61; see CR Doc. 1052: Statement of Reasons]. The Court also noted that a term of imprisonment of 228 months "would have been the sentence imposed by the Court to accomplish those factors, regardless of the guideline rulings" made today. [Id. at 63]. Judgment on Petitioner's conviction was entered on October 13, 2016. [CR Doc. 1051: Judgment].

Petitioner appealed to the Fourth Circuit Court of Appeals. [CR Doc. 1067]. Petitioner challenged: (1) the Court's decision to apply a base offense level of 33 based on the racketeering activity underlying Petitioner's conspiracy offense, namely the October 16, 2013 shooting; (2) the Court's "refusal to reduce Petitioner's offense level by two points for acceptance of responsibility, and enhancement of this offense level by two points for attempted obstruction of justice;" and (3) the substantive reasonableness of his sentence. United States v. Chavarria, 700 Fed. App'x 195, 196-98 (4th Cir. 2017) (unpublished decision). The Fourth Circuit affirmed the Court's judgment, holding that the evidence supported the Court's finding as to premeditation and malice; the Court properly considered Petitioner's pro se submissions when denying acceptance of responsibility and applying the obstruction of justice enhancement; and that his sentence was procedurally and substantively reasonable. Id. at 197-98.

Petitioner timely filed the present motion to vacate, arguing that counsel provided ineffective assistance with respect to sentencing.[2] [CV Doc. 1]. Petitioner purports to raise three

---

[2] After seeking leave of Court for additional time, Petitioner, with the assistance of University of Wisconsin law student, filed a memorandum in support of his motion to vacate. [CV Docs. 4-6].

grounds for relief in his motion. [See id. at 5-7]. These grounds, however, all relate to a claim of ineffective assistance of counsel based on his counsel's alleged failure to inform Petitioner of the potential consequences of contesting the factual basis of Petitioner's guilty plea through pro se submissions to the Court. [See id.]. The Government responded to Petitioner's motion [CV Doc. 9] and Petitioner replied [CV Doc. 14].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364,

7

Case 3:15-cr-00121-RJC-DSC   Document 1231   Filed 08/06/20   Page 7 of 10

369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Here, Petitioner claim relates to a sentencing issue in that Petitioner's submissions occurred after the entry of the guilty plea and before sentencing and ultimately impacted the Court's determination of the advisory guideline range for Petitioner's sentence. Petitioner claims that his attorney reserved the right for him to contest his involvement in the shooting by Villalta-Morales but did not tell him that he "risked losing acceptance of responsibility if [he] pressed the issue" of his involvement. [CV Doc. 1 at 4]. Petitioner claims that, had he known the risk involved, he "would not have contested [his] involvement in the shooting" with the letter to the undersigned and the Affidavit of Facts he submitted in his case. [Id. at 4-5, 7]. Petitioner tacitly admits that he did not advise his attorney that he was planning on filing the documents with the Court before he filed them. [See id. at 5].

Petitioner's arguments are not well taken. Petitioner again seeks to avoid responsibility for lying to the Court to obtain a lower sentence. On appeal, he claimed the Court erred in its

consideration of the submissions at issue here. Now, on collateral review, Petitioner blames his attorney for not telling him that lying to the Court may have consequences relative to his sentencing. Petitioner does not dispute that his attorney told him not to file anything with the Court. Rather, Petitioner ignored his attorney's advice and filed documents with the Court containing material, false representations that were intended to reduce Petitioner's sentence. At sentencing, Petitioner's counsel did everything she could to mitigate the consequences of Petitioner's decision to lie to the Court. Because it was Petitioner's own misconduct that resulted in the changes to the advisory guideline range, he cannot show deficient performance by counsel.

Even if Petitioner had shown deficient performance, he has not and cannot show prejudice. The Court, at sentencing, stated that it would have imposed the same sentence, 228 months, even if it had not denied Petitioner a reduction for acceptance of responsibility or applied the adjustment for obstruction of justice. [CR Doc. 1095 at 63; see CR Doc. 1052 at 3]. As such, Petitioner cannot show a reasonable probability that, but for his counsel's performance, his sentence would have been lower. See Royal, 188 F.3d at 249.

In sum, the Court will deny Petitioner's claims for his failure to show that his counsel's performance was deficient or that he was prejudiced by counsel's conduct relative to sentencing. See Strickland, 466 U.S. at 687-88; Royal, 188 F.3d at 249.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

9

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: August 5, 2020

*[signature]*

Robert J. Conrad, Jr.
United States District Judge